HENRY GODDARD *versus* JEREMIAH S. PUTNAM & al. Exec'rs.

If one party send a letter to their attorney, saying that, " in our proposal to Mr. G. (the other party) we engaged to give up his note, he paying $175, as interest, and conveying or transferring," certain real estate and bank-stock, and, "if he complies with the above, you will please settle the business;" and the other party acknowledges on the letter the receipt of the note, he "having complied with the requirements therein expressed;" the paper containing the *proposal*, may be received in evidence, as explanatory of the actual agreement of the parties, in an after controversy between them.

Where the interest due on a note was paid in cash, and certain real estate and bank stock were received, "to settle the principal of the note," and as an "equivalent for the principal of the note," *it was held*, that an overpayment of that note, in that manner, occasioned by a mistake in the computation of the sum due thereon, might be recovered back, in an action at law.

ASSUMPSIT against J. S. Putnam and Paul Langdon, as executors of the last will and testament of Elizabeth Sewall, to recover the sum of $250, alleged to have been paid by mistake in supposing that a note from the plaintiff to the testatrix was on interest from its date, when in fact it was not on interest until it became payable. The note was for $2212,25, payable to William Goddard and by him indorsed, " without recourse," bearing date Nov. 5, 1835, and payable on March 24, 1837. There was nothing said in the note respecting interest. There were the following indorsements on the note. " Oct. 17, 1837. Received $265,45 for two years interest on this note." " July 26, 1839. Received interest to Nov. 5, 1839, ($232,27.)" " May 10, 1841. Received note for interest, $175."

The note was given up to the plaintiff on May 10, 1841, by direction of the executors, on his conveying to them certain

real estate and transferring certain stock in a bank at Portland. At the trial before WHITMAN C. J, the defendants introduced testimony tending to show, that the real estate and bank stock taken in payment thereof were of less value than the amount of the note. Letters from the plaintiff to Mrs. Sewall and to the executors, and from them to him, were read. The letters and evidence are stated at length, but sufficient appears to understand the *questions of law* involved in the case, without copying the whole here.

The report states, " that the defendants, by their counsel, contended that the house and lot conveyed to them was received by them in satisfaction of the amount due on the note of Nov. 5, 1835, at the time of the decease of the testatrix, and the note of $175, afterwards paid, was received for and in lieu of the interest which accrued subsequent to such decease — that the proposition in writing dated April 28, 1841, signed by one of the defendants and accepted by the plaintiff in writing under his hand, and carried into effect by the plaintiff May 10, 1841, is conclusive in this case as to what were the terms of the contract between the parties; that the letters of April 19, 1841, and April 26, 1841, though not objected to when introduced, which was before the letter from Paul Langdon to Judge Preble had been read, are not admissible or competent in law to explain or vary the terms of the proposition so made and accepted; and that neither are the letters of May 15 and May 25, 1841, competent or sufficient to modify or explain the aforesaid proposition of April 28, and acceptance thereof of May 10; and further, that the proposition on the part of the defendants being entire and as such carried into effect by the plaintiff, if it were founded upon a mistake of the parties, such supposed mistake cannot be corrected in this form of action by the plaintiff, but that the contract must be set aside by a bill in equity so that the parties may be respectively restored to their former rights and condition. And the defendants' counsel further contended that the payment of $265,45, Oct. 17, 1837, should be applied first to pay any interest actually accrued, and the balance towards the principal, and

could not, nor any part of it, be recovered back as paid by mistake. And the defendants' counsel moved the Court so to instruct the jury in these several particulars."

The presiding Judge declined so to instruct them; and instructed them, that they must determine from the evidence whether the $212,25 was for money actually received, or for the interest which would accrue on a loan of $2000, being the residue of the note until the time when it would become payable. That if the latter, then they must ascertain from the evidence whether the $212,25 had or had not by mistake been treated as a part of the principal, and whether the plaintiff and defendants had finally adjusted and settled the note upon the supposition that it was so. That if they should be satisfied in the affirmative, then the plaintiff, in the absence of any fraud practised on his part, was entitled to recover. But if in the final adjustment nothing more had been exacted and received than the $2000, and interest thereon, then the plaintiff ought not to recover. That if on the other hand the mistake did exist, yet if the circumstances attending the final adjustment were such as to authorize the belief that it was not the understanding of the parties, that the defendants were exacting payment of the note in full with interest on the $2212,25, and that in getting payment in the manner they did, they were merely compromising with the debtor, as if in doubtful or insolvent circumstances, and without receiving or calculating to receive the whole amount of $2212,25, with interest thereon, the plaintiff could not recover. The verdict was for the plaintiff for the sum of $212,25, with interest thereon.

The letter referred to, as dated April 28, 1841, was introduced by the defendants, was addressed to the attorney of the executors in Portland, and was in these words: "In our proposal to Mr. Goddard, we engaged to give up his note, he paying $175 as interest on his note, and conveying or transferring to the executors twelve shares in the Canal Bank, and house, land and appurtenances belonging to the same, which we viewed, with a good deed of the same. If he complies

with the above, you will please settle the business, and oblige your ob't serv't, Paul Langdon.

" April 28, 1841."

On the back of this letter, in the handwriting of the plaintiff, were these words.

" Portland, May 10, 1841.

" Received of Judge W. P. Preble the note within referred to, I having complied with the requirements therein expressed.

" Henry Goddard."

The defendants also moved that the verdict might be set aside and a new trial granted for the following reasons.

1st. Because the verdict is against law upon the facts offered in evidence and proved in the case.

2. Because the damages assessed by the jury are excessive, and not warranted by the rules of law.

3. Because the verdict is against evidence.

4. Because the Court left the legal construction of written evidence of contract as matter of fact to the jury.

5. Because the Court misdirected the jury in matter of law.

6. Because the Court and jury by the direction and disposition of the cause have made a contract for the testatrix which she never entered into.

7. Because the Court refused to direct the jury in matters of law as the defendants requested them to do.

*Preble*, for the defendants, argued in support of the positions taken by him at the trial, and in his motion.

*W. P. Fessenden*, for the plaintiff, said that if the verdict was for a sum greater than the amount received by mistake, that he would release it.

The mistake was in casting too much interest on the note. This interest was paid in money, and paid and received as interest. The principal was paid in a mode satisfactory to the parties, though not in money. If the parties had not agreed to the payment of the money as interest, the law would so have appropriated it. Too much money was paid, and it may be recovered back in this action. *Howe* v. *Bradley*, 19 Maine

R. 31; *Cremer* v. *Higginson*, 1 Mason, 307; 4 Cranch, 317; 6 Cranch, 8; 9 Wheat. 720.

There was no compromise, or contract of compromise, between the parties. No deduction was made in the amount, and no mention of any deduction is made by either party in the whole transaction. The debt was agreed to be paid, and was paid in real estate and bank stock instead of money.

But if it can be called a contract, we do not seek to disaffirm it, but to confirm it. By mistake there was an overpayment, which we ask to recover back. Payment is the execution of the contract. This contract, however, was the original contract by the note. The mere agreement to take property in payment, instead of money, is not the contract on which the payment was made.

The letter of Langdon of April 28, 1841, refers to certain other letters, as containing the proposition. These are clearly admissible, and as much so, as a deed is, which is referred to in another for a description of the land intended to be conveyed.

The opinion of the Court was drawn up by

SHEPLEY J. — The suit is brought to recover back a sum of money alleged to have been paid under a mistake of facts. The case is presented on a report of the testimony and proceedings at the trial; and on a motion for a new trial. The alleged mistake arose out of the payment of a promissory note, bearing date on November 5, 1835, made by the plaintiff, and payable to William Goddard or order on March 24, 1837, for the sum of $2212,25. It was indorsed to Elizabeth Sewall, deceased, whose executors are the defendants. The testimony tending to prove, that there was a mistake, arises wholly out of written documents. That note was paid to the attorney of the executors on May 10, 1841, by the conveyance of certain property, and by a new note for the interest. And it is contended, that the property was not received in payment of any definite sum of money then estimated to be due; but was received by way of compromise for whatever might be due upon the note exclusive of the sum paid as interest. And that

the letter from one of the executors to their attorney, bearing date on April 28, 1841, with the receipt of the plaintiff upon it, is conclusive evidence, that it was so received. The object of that letter was not to make proposals, which being accepted would constitute the agreement between the parties. It was to communicate the terms of settlement and payment before agreed upon, and to authorize their attorney to settle the note upon those terms. For this purpose it was necessary, that the acts to be performed should be clearly stated. But it was not necessary, that the particular terms of the agreement, which led to the performance of those acts should be. If there were error or obscurity in reciting the terms of the agreement, that would seem to be properly corrected or explained by a reference to the proposal itself, referred to in the same letter. The receipt of the plaintiff upon that letter states, that he has "complied with the requirements therein expressed." Or in other words, that he has performed the acts required of him. It does not declare, that the agreement was therein correctly and fully recited. Such being the object of that letter, and "our proposal to Mr. Goddard," being referred to in it as the foundation of the recited engagement, the document thus referred to may, upon a strict application of the rules of evidence, be received as explanatory of the actual agreement between the parties. Upon looking into the documents there can be no doubt, to which one of them the reference was made. It was to the letter from one of the executors to the plaintiff, bearing date on April 26, 1841. In that letter the executor states, "we are willing to settle *the principal of the note* upon the terms proposed in your communication of the 17th;" but thought, "as the income was an entirely separate business, we being held to pay to the devisees all the income arising from the property of the estate, should request an extra consideration for that; for we do not think the property, you propose to convey, is more than equivalent for the principal of the note; nevertheless as you, so are we, desirous of bringing this to a close, we have concluded to accede to your proposal in your explanatory communication of the 20th; namely to con-

vey to us as executors by a warrantee deed that messuage, land, house and tenement, which we examined, transfer and convey to us twelve shares in the capital stock of the Canal bank, and the interest, amounting as you say to $189, now due upon the note, but of which you are only willing to pay $160. You must remember, that the devisees are entitled to all their interest in the property, and while Capt. Langdon is willing both as devisee and executor to relinquish a part, Miss Eliza will expect the whole, therefore $175 is the amount of interest, that should be paid to them either by note or in cash, as is most agreeable to yourself." This original proposal referred to, states most clearly, that the estate and bank shares were to be received " to settle the principal of the note" and not by way of compromise, or for an uncertain amount, but as " equivalent for the principal of the note." There was a compromise or relinquishment of $14 of the interest stated to be due. But that interest is stated to be applicable to a different purpose from that of the principal, and it therefore constituted a separate subject for consideration and arrangement. It is said, that the executor by the use of the word " principal," did not mean the sum for which the note was made, but the amount due upon it at the time of the decease of the testatrix. If this be so, it cannot be material in this case, for at the time when that letter was written, there was no interest due and unpaid, which had accrued before her decease. The principal, which was paid, was therefore the sum for which the note was made. Was that whole principal actually due? The documents shew, that the loan was $2000, and that interest, at a rate of more than six per cent. from the date of the note to its maturity, was included in it as a part of the principal. The note was erroneously regarded as bearing interest from its date, and the interest was paid and received accordingly. The amount paid and indorsed as interest, when no such amount of interest was due, could not be recovered back as an over-payment of interest by mistake, while the note remained unpaid, for the law would apply it in payment of a portion of the principal. And the result is, that by such an

application of it, the whole principal was not due at the time when the note was paid.   The note having been paid, and the payment received upon the belief, that the whole principal was due on November 5, 1839, when in fact it was not; the mistake is clearly proved.   And the amount of the over-payment becomes certain, requiring only a calculation of the amount due on that day, which being deducted from the amount, for which the note was made, shows the amount of the over-payment.

It is contended, that this sum should not be restored because payment was made in property, which was not then worth in cash so much as the amount really due upon the note.   When a creditor consents to receive payment in specific property considered at the time as equivalent to the amount for which it is received, he cannot upon a discovery of an error in estimating the amount due, insist upon a new valuation of the property.   In this case the executors appear to have examined the estate, and to have had an opportunity to ascertain the market value of the shares in the bank ; and they considered the property equivalent to the amount of the principal of the note.   It is doubtless true, that they came to that conclusion, because they found it difficult or impossible to obtain payment in cash ; but it is not perceived, that the legal rights of the parties can be thereby varied.   The judicial tribunals cannot correct errors in judgment ; and yet they are required to aid in the correction of mistakes arising from a misapprehension of the true state of facts.

It is also contended, that this is not the proper remedy ; that relief should be granted only in equity by setting aside the whole settlement and restoring the parties mutually to their former rights.   Such would be the proper course, if the settlement had been produced by any misrepresentation or fraud. *Chase* v. *Garvin*, 19 Maine R. 211.   But such a position is excluded by the finding of the jury.   It is also said, that if the settlement is sustained, and the plaintiff recovers against the executors, they will be chargeable with the whole principal of the note, although the property received may be of much less

value. The amount of any judgment, which the plaintiff may recover, would seem to be a proper charge against the estate; and their position, so far as it respects the mode of payment of the note, would not be varied by these proceedings. It will be perceived upon a calculation on the principles before stated, that the verdict of the jury was for too large an amount; and it must be set aside and a new trial granted, unless the plaintiff will enter a *remittitur* for all over the amount of the errors, with interest on it from the time, when a demand was made upon the executors to have it corrected.